UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

EFRAIN ROSARIO, Jr.
CYNTHIA L ROSARIO,                                    Case No. 14-26891-RBR
                                                      Chapter 7

       Debtor(s).

_____/

**TRUSTEE'S MOTION FOR AN ORDER (I) AUTHORIZING THE SALE OF 10248 SW
12 STREET, PEMBROKE PINES, FL 33025, FREE OF LIENS, CLAIMS
ENCUMBRANCES OR INTERESTS PURSUANT TO 11 U.S.C. §363; (II)
APPROVING CONTRACT OF SALE; (III) APPROVING FORM AND MANNER
OF NOTICE; AND (IV) APPROVING SURCHARGE OF COLLATERAL**

Kenneth A. Welt, the Chapter 7 Trustee (the ***"Trustee"***) of the bankruptcy estate of

EFRAIN ROSARIO, Jr. and CYNTHIA L ROSARIO (the "***Debtors"***), hereby requests entry of

an Order (i) authorizing the sale of 10248 SW 12th Street, Pembroke Pines, FL 33025, free of

liens, claims encumbrances or interests pursuant to 11 U.S.C. §363; (ii) approving contract of

sale; (iii) approving form and manner of notice; and (iv) approving surcharge of collateral, and

states:

**CONCISE STATEMENT**

| | |
|---|---|
| **General Description:** | Sale of 10248 SW 12th Street, Pembroke Pines, FL 33025 |
| **Date:** | As agreed between Trustee and purchaser |
| **Purchaser:** | Andrew Freire & Carmela Navarrete[1] |
| **Location:** | 10248 SW 12th Street, Pembroke Pines, FL 33025 |
| **Format:** | Private sale open to the Public |
| **Terms:** | As is, Where is |
| **PII:** | No Personally Identifiable Information will be sold. |
| **Objection Deadline:** | Two days prior to the attached Notice of Hearing |
| **Hearing Date:** | See attached Notice of Hearing |

---

[1] Andrew Freire & Carmela Navarrete (the "***Purchasers***") are not insiders of the Debtors.

## BACKGROUND

1.     On July 28, 2014 (the *"Petition Date"*), the Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. Subsequently, the Trustee was duly appointed Chapter 7 Trustee.

2.     As of the Petition Date, the Debtors were the record owner of

**Property Address**:

10248 SW 12th St., Pembroke Pines, FL 33025

**Legal Description:**

All that certain parcel of land situate in the County of Broward and State of Florida, being known and designated as follows:

A portion of Tract "A", "THE LANDINGS", according to the plat thereof, as recorded in Plat Book 140 at Page 22 of the Public Records of Broward County, Florida, being more particularly described as follows:

Commence at the Northeast Corner of said Tract "A", thence run South 87 degrees 49 minutes 35 seconds West along the North line of said Tract "A" for 1755.29 feet; thence South 2 degrees 10 minutes 25 seconds East for 652.50 feet; thence North 87 degrees 49 minutes 35 seconds East for 250.00 feet; thence South 2 degrees 10 minutes 25 seconds East for 17.50 feet to the Point of Beginning of the following described parcel of land; thence continue South 2 degrees 10 minutes 25 seconds East for 105.00 feet; thence North 87 degrees 49 minutes 35 seconds East for 75.00 feet; thence North 2 degrees 10 minutes 25 seconds West for 105.00 feet; thence South 87 degrees 49 minutes 35 seconds West for 75.00 feet to the Point Beginning, all lying and being in Section 19, Township 51 South, Range 41 East, City of Pembroke Pines, Broward County, Florida;

(the *"Property"*)

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8704/8704-1/01564559.DOCX.}

3.      The Property is listed as an asset on the Debtors' Schedule A. The Debtors own the Property as husband and wife, but did not claim the Property as exempt. Therefore, the Property is property of the estate.

4.      The Property is encumbered by a first-mortgage lien (the *"BOA Lien"*) of Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP (*"BOA"*). The BOA Lien was reduced to a Consent Final Judgment of Foreclosure (the *"Foreclosure Judgment"*) on or about March 25, 2014. Prior to the foreclosure sale, the Debtors filed the petition, staying the sale. Pursuant to the Foreclosure Judgment, BOA is owed $397,423.85, plus post-judgment interest since the entry of the Foreclosure Judgment.

5.      The Landings Master Association, Inc., (the "*Landings*") and Emerald Lake Estates at the Landings Association, Inc., ("*Emerald Lake*") may also have *de minimis* liens against the Property. The Landings is listed on the Debtors' Schedule as a secured claimant of an unknown amount[2] and Emerald Lake is listed with a $4,600 secured claim. However, both the Landings and Emerald Lake could be compelled to accept a money satisfaction of such liens in a BOA foreclosure. Thus, the sale of the Property, free and clear of the Landings and Emerald Lake liens satisfies 11 U.S.C. § 363(f)(5).

## THE OFFER

6.      On or about January 7, 2015, the Trustee received an offer for the purchase of the Property for $280,000.00 (the *"Offer"*).

7.      The Trustee believes that the Offer is well priced based on the Comparable Properties Report, which indicates that the Property's target projected sale price should be

---

[2] As of the filing of this Motion, the Landings has not recorded a claim of lien in the Broward County Records.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8704/8704-1/01564559.DOCX.}

$276,300.00, based on recent sales of comparable sized homes in the area within the last year. A copy of the Comparable Properties Report is attached as **Exhibit A**.

8.      It is in the best interest of the estate to sell the Property pursuant to the Offer. Pursuant to the Offer, the Purchasers will buy the Property for $280,000.00, with all due diligence and inspection periods already having passed as of the filing of this motion. A Copy of the contract (the ***"Contract"***) for the purchase and sale of the Property, which embodies the Offer, is attached as **Exhibit B**.

## RELIEF REQUESTED

### A.  Approval of the sale.

9.      By this Sale Motion, the Trustee seeks the Court's approval of a sale, pursuant to Section 363 (f), of the Property. Pursuant to Fed.R.Bankr.P. 6004(f)(1), "sales not in the ordinary course of business may be by private sale or by public auction." (emphasis added). The Trustee submits that the Property has been marketed in a commercially reasonable manner, and approval of the sale is in the best interest of the Estate as a whole.

### B.  Sale free and clear.

10.      The Trustee seeks to sell the Property free and clear of liens, claims and encumbrances but subject to: comprehensive land use plans, zoning restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivision; outstanding oil, gas and mineral rights of record without right of entry; and unplatted public utility easements of record or taxes for year of closing and subsequent years.

11.      Section 363(f) of the Bankruptcy Code authorizes the Trustee to sell property of the estate free and clear of any liens, claims or encumbrances if one of the following is met: (1)

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8704/8704-1/01564559.DOCX.}

applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

12.    The language of Section 363(f) is in the disjunctive, so that a sale free and clear of interests can be approved if any of the aforementioned conditions are met. *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Trustee asserts that since the sale price exceeds the aggregate economic value of the liens and encumbrances against the Property by approximately $3,700.00, section 363(f)(3) authorizes the sale free and clear of all interests, liens, claims, and encumbrances.[3] Additionally, other than the BOA Lien, any other secured creditor could be forced to accept a money satisfaction in a foreclosure of the BOA Lien,[4] and to the extent there are any liens or encumbrances other than the those set forth in paragraphs 4 or 5 of the Motion, there would be a bona fide dispute as to the validity of such liens.

13.    The Trustee submits that the sale should be free and clear of all liens, claims and encumbrances, with any such liens, claims or encumbrances to attach to the proceeds of the sale. The sale satisfies the requirements of Section 363(f)(3), (f)(4) and/or (f)(5) of the Bankruptcy Code.  Thus, a sale free and clear is proper.

---

[3] See *In re Beker Indus. Corp., 63 B.R. 474, 475-76 (Bankr. S.D.N.Y. 1986); In re Collins,* 180 B.R. 447 (Bankr. E.D. Va. 1995); *In re Terrace Gardens Park Partnership,* 96 B.R. 707 (Bankr. W.D. Tex. 1989).
[4] *See In re Levitt & Sons, LLC*, 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8704/8704-1/01564559.DOCX.}

**C. Approval of form and manner of notice of sale**

14.    Pursuant to Bankruptcy Rule 2002(a), the Trustee is required to provide creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested. The Trustee has served or will serve this sale motion on all creditors and the Office of the United States Trustee. The Trustee seeks a finding that such notice is sufficient under the Federal Rules of Bankruptcy Procedure and the circumstances.

15.    The Trustee will have provided notice of the sale to all creditors and interested parties while the Broker will have extensively marketed the Property. The Trustee submits that the result of the sale will be a fair and reasonable market price.

**D. Approval of Surcharge.**

16.    The BOA Lien should be surcharged $39,050.00 for the Trustee's expenses in selling the Property.

17.    To "surcharge collateral, a [trustee] must demonstrate that the secured creditor expressly or impliedly consented to the expense or, absent such consent, that (a) the expenditure was necessary; (b) the amount expended was reasonable; and (c) the secured creditor benefited from the expenditure. In *re A.B.A. Fire Equip., Inc.,* 11-35796-BKC-AJC, 2012 WL 2564468 (Bankr. S.D. Fla. July 2, 2012) (emphasis added) (citing *In re Spa at Sunset Isles Condominium Assoc, Inc*., 454 B.R. 898, 906 (Bankr.S.D.Fla.2011)).

18.    The requirements are disjunctive in that, if there is consent, none of the elements of necessity, reasonableness, and benefit need be proven. Conversely, if there is necessity, reasonableness, and benefit, consent need not be present.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8704/8704-1/01564559.DOCX.}

i.  <u>The expenses of the Trustee and his attorney were necessary.</u>

19.     In this case, the only asset being administered is the Property. The Trustee was required to obtain Court approval of the sale pursuant to 11 U.S.C. § 363(f), and thus the employment of an attorney was necessary. Finally, the Trustee's services to the Estate, in considering and accepting an offer for the sale of the Property, were required pursuant to 11 U.S.C. § 704(a)(1), and (2). Thus, the Trustee's services are necessary.

ii.  <u>The expenses of the Trustee and his attorney were reasonable.</u>

20.     The Trustee's attorney expects the total attorney fees incurred in obtaining authorization of the sale is approximately $5,000.00. The Trustee's attorney's services are billed at $295.00 per hour, which is standard in this district. Accordingly, the Trustee's attorney fees are reasonable.

21.     Finally, the Trustee's fee for administering a $280,000.00 asset is set pursuant to 11 U.S.C. § 326 at $17,250.00. Thus, by statute, the fee is reasonable.

iii.  <u>The expenses benefitted BOA.</u>

22.     The expenses benefitted BOA. If BOA had sought to foreclose, they would likely have taken title back at the foreclosure sale. Bank owned properties sell for as much as 20% less ($56,000.00 on a $280,000.00 Property) than market sales.[5] The trustee's ability to sell the Property free and clear, however, results in a sale at or above market value. Moreover, BOA would have been required to employ a broker to sell the Property, for which the standard rate in the area is 6%, or approximately $16,800.00. Finally, the Trustee submits that the attorney fees incurred in obtaining stay relief, resetting the foreclosure sale, and taking back title, would equal

---

[5] Lee, K. 2010. *Examining REO sales and price discounts in Massachusetts. REO and Vacant Properties: Strategies for Neighborhood Stabilization. Washington D.C.*: Federal Reserve Bank of Boston and Cleveland and the Federal Reserve Board, 55.

or exceed $2,000.00. Thus, if BOA foreclosed, it is likely that it would realize only approximately $208,560.00 of the approximately $397,423.85 owed. Thus, the benefit to BOA is approximately $74,440.00.[6]

23.      Accordingly, BOA is benefitted by the sale and the expenses incurred by the Trustee. The Trustee's expenses to be surcharged are $39,050.00, which is far less that the $74,440.00 benefit, and which the Trustee submits is more than set off by the higher sale price the Trustee is able to generate. Thus, the Court should approve the $39,050.00 surcharge.

WHEREFORE, the Chapter 7 Trustee, Kenneth A. Welt, respectfully requests the entry of an Order: (i) authorizing the sale of 10248 SW 12th Street, Pembroke Pines, FL 33025, free of all liens, claims, encumbrances or interests pursuant to 11 U.S.C. §363(f); (ii) approving the contract of sale; (iii) approving form and manner of notice; (iv) approving the $39,050.00 surcharge of the BOA Lien, and  (v) for such other and further relief as this Court deems just and proper.

Dated: January 30, 2015.                    s/ Lawrence E. Pecan
                                            Lawrence E. Pecan, Esquire
                                            Fla. Bar No: 99086
                                            LPecan@melandrussin.com
                                            MELAND RUSSIN & BUDWICK, P.A.
                                            3200 Southeast Financial Center
                                            200 South Biscayne Boulevard
                                            Miami, Florida 33131
                                            Telephone: (305) 358-6363
                                            Telecopy: (305) 358-1221
                                            *Attorneys for the Trustee*

---

[6] The difference between the $280,000.00 sale price and the approximately $209,000.00 that would be realized by BOA.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8704/8704-1/01564559.DOCX.}



### Greater Fort Lauderdale REALTORS® - IMAPP
### Comparable Properties Report -
### 10248 SW 12TH ST, PEMBROKE PINES, FL 33025-4701

Search Florida Statewide ↘

## Subject Property

**PID #** 5141-19-06-0540
**Address:**
10248 SW 12TH ST
PEMBROKE PINES, FL 33025-4701

| | |
|---|---|
| Last Sale Price: | $100 |
| Last Sale Date: | 03/24/2006 |
| Market Value: | $189,060 |
| Assessed Value: | $189,060 |
| Total Area: | 2,364 sf |
| Living Area: | 1,894 sf |
| Total Land Area: | 8,625 sf |
| Year Built: | 1996 |
| Stories: | 1 |
| Bedrooms: | 0 |
| Bathrooms: | 0 |
| Pool: | Yes |
| Garage: | Yes |
| Waterfront: | Yes |



© PropertyKey. 2014

## Projected Sale Price

**Estimated Range Based On Value Ratio**
$244,200 — **$272,100** — $318,200

**Estimated Range Based On Price per SF**
$242,400 — **$280,500** — $300,000

## Statistics About Comparable Properties

| | Sale Price | Living Area | Market Value | $/SF | MV Ratio |
|---|---|---|---|---|---|
| High: | $303,000 | 2,250 sf | $213,880 | $141.46 | 1.683 |
| Low: | $235,000 | 1,943 sf | $180,040 | $114.30 | 1.292 |
| Median: | $283,500 | 2,126 sf | $196,880 | $135.72 | 1.446 |
| Average: | $281,990 | 2,134 sf | $196,400 | $132.26 | 1.439 |

**Explanation of Calculations:** The Projected Sales Price section applies these statistics to determine the most likely sales price based on existing market conditions. Calculations are done using two methods, Value Ratio and Price Per Square Foot. The Price Per Square Foot is the last sale price divided by total building square footage. The Value Ratio is the last sales price divided by the market value. A Value Ratio below 0.950 signifies that the property sold for less than the Market Value. It might be a quit claim that does not reflect the true property value. A very high Value Ratio may indicate a property that has been split, or improved since the County Assessor's office assigned the market value.

## Comparable Properties

**1.** 9531 SW 7TH CT
PEMBROKE PINES, FL 33025-1123
**Last Sale:** $279,000 on 04/21/2014 ($136.77/SF)
**MVR:** 1.460    **Market Value:** $191,120
**PID #** 5141-17-08-0110
**Bedrooms:** 0    **Baths:** 0
**Year Built:** 1981
**Assessed Value:** $158,820
**Lot Size:** 7,500 sf    **Waterfront:** No
**Total Area:** 2,571 sf    **Garage:** Yes
**Living Area:** 1,655 sf    **Pool:** Yes
**Distance:** 0.75 miles    **Stories:** 1

**2.** 710 SW 96TH AVE
PEMBROKE PINES, FL 33025-1102
**Last Sale:** $270,000 on 03/11/2014 ($138.96/SF)
**MVR:** 1.339    **Market Value:** $201,710
**PID #** 5141-17-08-0990
**Bedrooms:** 0    **Baths:** 0
**Year Built:** 1982
**Assessed Value:** $201,710
**Lot Size:** 7,844 sf    **Waterfront:** Yes
**Total Area:** 2,279 sf    **Garage:** Yes
**Living Area:** 1,655 sf    **Pool:** Yes
**Distance:** 0.69 miles    **Stories:** 1

**3.** 10575 SW 12TH MNR
PEMBROKE PINES, FL 33025-3576
**Last Sale:** $290,000 on 07/11/2014 ($141.46/SF)
**MVR:** 1.435    **Market Value:** $202,050
**PID #** 5141-19-05-0960
**Bedrooms:** 0    **Baths:** 0
**Year Built:** 1991
**Assessed Value:** $186,630
**Lot Size:** 5,172 sf    **Waterfront:** Yes
**Total Area:** 2,171 sf    **Garage:** Yes
**Living Area:** 1,756 sf    **Pool:** Yes
**Distance:** 0.15 miles    **Stories:** 1

**4.** 10381 SW 9TH LN
PEMBROKE PINES, FL 33025-3585
**Last Sale:** $285,000 on 06/24/2014 ($137.81/SF)
**MVR:** 1.333    **Market Value:** $213,880
**PID #** 5141-19-05-0770
**Bedrooms:** 3    **Baths:** 2
**Year Built:** 1990
**Assessed Value:** $181,750
**Lot Size:** 5,775 sf    **Waterfront:** Yes
**Total Area:** 2,069 sf    **Garage:** Yes
**Living Area:** 1,935 sf    **Pool:** Yes
**Distance:** 0.13 miles    **Stories:** 2

**5.** 700 SW 99TH TER
PEMBROKE PINES, FL 33025-1010
**Last Sale:** $303,000 on 07/28/2014 ($134.67/SF)
**MVR:** 1.683    **Market Value:** $180,040
**PID #** 5141-17-12-1050
**Bedrooms:** 4    **Baths:** 2
**Year Built:** 1987
**Assessed Value:** $174,180
**Lot Size:** 8,529 sf    **Waterfront:** No
**Total Area:** 2,550 sf    **Garage:** Yes
**Living Area:** 1,950 sf    **Pool:** Yes
**Distance:** 0.47 miles    **Stories:** 1

**6.** 10010 SW 6TH CT
PEMBROKE PINES, FL 33025-1043
**Last Sale:** $299,900 on 02/28/2014 ($133.29/SF)
**MVR:** 1.498    **Market Value:** $200,150
**PID #** 5141-17-12-0270
**Bedrooms:** 4    **Baths:** 2
**Year Built:** 1986
**Assessed Value:** $175,320
**Lot Size:** 9,309 sf    **Waterfront:** No
**Total Area:** 2,550 sf    **Garage:** Yes
**Living Area:** 1,950 sf    **Pool:** Yes
**Distance:** 0.43 miles    **Stories:** 1

**7.** 741 SW 100TH AVE
PEMBROKE PINES, FL 33025-1005
**Last Sale:** $282,000 on 10/04/2013 ($125.33/SF)
**PID #** 5141-17-12-1100
**Bedrooms:** 4    **Baths:** 2
**Year Built:** 1987
**Lot Size:** 8,529 sf    **Waterfront:** No
**Total Area:** 2,550 sf    **Garage:** Yes
**Living Area:** 1,950 sf

EXHIBIT A

| | | | |
|---|---|---|---|
| **MVR:** 1.457 **Market Value:** $193,610 | **Assessed Value:** $168,030 | **Distance:** 0.43 miles | **Stories:** 1 |

**8.** 711 SW 99TH AVE
PEMBROKE PINES, FL 33025-1011
**Last Sale:** $276,000 on 11/25/2013 ($122.67/SF)

| | | | |
|---|---|---|---|
| | **PID #** 5141-17-12-0930 | **Lot Size:** 7,688 sf | **Waterfront:** No |
| | **Bedrooms:** 4  **Baths:** 2 | **Total Area:** 2,550 sf | **Garage:** Yes |
| | **Year Built:** 1986 | **Living Area:** 1,950 sf | **Pool:** Yes |
| **MVR:** 1.314 **Market Value:** $210,040 | **Assessed Value:** $203,300 | **Distance:** 0.53 miles | **Stories:** 1 |

**9.** 9701 SW 12TH ST
PEMBROKE PINES, FL 33025-3654
**Last Sale:** $300,000 on 06/02/2014 ($137.30/SF)

| | | | |
|---|---|---|---|
| | **PID #** 5141-20-18-2220 | **Lot Size:** 6,369 sf | **Waterfront:** No |
| | **Bedrooms:** 4  **Baths:** 2 | **Total Area:** 2,664 sf | **Garage:** Yes |
| | **Year Built:** 1989 | **Living Area:** 2,114 sf | **Pool:** Yes |
| **MVR:** 1.584 **Market Value:** $189,450 | **Assessed Value:** $171,390 | **Distance:** 0.62 miles | **Stories:** 2 |

**10.** 941 SW 100TH TER
PEMBROKE PINES, FL 33025-0906
**Last Sale:** $235,000 on 04/29/2014 ($114.30/SF)

| | | | |
|---|---|---|---|
| | **PID #** 5141-20-15-0710 | **Lot Size:** 5,830 sf | **Waterfront:** Yes |
| | **Bedrooms:** 4  **Baths:** 2 | **Total Area:** 2,411 sf | **Garage:** Yes |
| | **Year Built:** 1987 | **Living Area:** 2,011 sf | **Pool:** Yes |
| **MVR:** 1.292 **Market Value:** $181,950 | **Assessed Value:** $163,090 | **Distance:** 0.35 miles | **Stories:** 2 |

© iMapp, Inc, 2014 | Information is believed accurate but not guaranted and should be independently verified.


Powered by
PropertyKey

# "AS IS" Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**ıİı FloridaRealtors**

1*  **PARTIES:** TRUSTEE KENNETH A. WELT FOR THE ESTATE OF EFRAIN & CYNTHIA ROSARIO _____ ("Seller"),
2*  and _____ ANDREW FREIRE & CARMELA NAVARRETE _____ ("Buyer"),
3   agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4   (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase and
5   any riders and addenda ("Contract"):
6   1. **PROPERTY DESCRIPTION:**
7*     (a) Street address, city, zip: _____ 10248 SW 12TH ST , Pembroke Pines, FL 33025-4701
8*     (b) Property is located in: _____ Broward _____ County, Florida. Real Property Tax ID No.: _____ 514119060540
9*     (c) Real Property: The legal description is THE LANDINGS 140-22 B A PORTION TRACT A DESC AS:COMM AT NE COR
10        SA
11
12        together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and attached
13        wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or by other terms
14        of this Contract.
15     (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items which
16        are owned by Seller and existing on the Property as of the date of the initial offer are included in the purchase:
17        range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s), drapery rods and
18        draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate and other access
19        devices, and storm shutters/panels ("Personal Property").
20*       Other Personal Property items included in this purchase are: _____
21
22        Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*    (e) The following items are excluded from the purchase: _____
24

## PURCHASE PRICE AND CLOSING

26*  2. **PURCHASE PRICE** (U.S. currency): ............................................................$ _____ 280000
27*     (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ............$ _____ 13500
28        The initial deposit made payable and delivered to "Escrow Agent" named below
29*       **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within _____ (if left blank,
30        then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
31        SHALL BE DEEMED SELECTED.
32*       Escrow Agent Information: Name: _____
33*       Address: _____
34*       Phone: _____ E-mail: _____ Fax: _____
35*     (b) Additional deposit to be delivered to Escrow Agent within _____ 7 DAYS _____ (if left blank, then 10)
36*        days after Effective Date............................................................................$ _____ 14,000
37        (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8.............. _____
39*     (d) Other: ............................................................................$ _____
40     (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*        transfer or other COLLECTED funds.....................................................$ _____ BALANCE
42        NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43   3. **TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44*     (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before _____
45*        _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46        Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
47        counter-offer is delivered.
48     (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or initialed
49        and delivered this offer or final counter-offer ("Effective Date").
50   4. **CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur and
51      the closing documents required to be furnished by each party pursuant to this Contract shall be delivered ("Closing") on
52*     _____ 7 days from Court Notice _____ ("Closing Date"), at the time established by the Closing Agent.
53   5. **EXTENSION OF CLOSING DATE:**
54      (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA) notice
55         requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to
56         exceed 7 days.

Buyer's Initials _____  _____        Page 1 of 11        Seller's Initials _____  _____
FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 058519-900142-0490994

*formsimplicity*

EXHIBIT B

57     (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i)
58         disruption of utilities or other services essential for Closing or (ii) Hazard, Wind, Flood or Homeowners' insurance,
59         to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration
60         of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or
61         Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred
62*        within _____ (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by
63         delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and
64         Seller from all further obligations under this Contract.

65 **6.  OCCUPANCY AND POSSESSION:**
66     (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the
67         Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
68         personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
69         codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the
70         Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be
71         deemed to have accepted the Property in its existing condition as of time of taking occupancy.
72*     (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73         subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts
74         and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be
75         delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the
76         lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of
77         written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be
78         refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel
79         Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied
80         by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

81* **7.  ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this
82*      Contract; ☐ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

83 **FINANCING**

84 **8.  FINANCING:**
85*     ☒ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to
86         Buyer's obligation to close .
87*     ☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA ☐ VA
88*         or ☐ other _____ (describe) loan on the following terms within _____ (if left blank, then 30) days after
89*         Effective Date ("Loan Commitment Date") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in
90*         the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing
91*         rate based upon Buyer's creditworthiness), and for a term of _____(if left blank, then 30) years ("Financing").

92*      Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective
93      Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment")
94      and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage
95      loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such
96      status and progress to Seller and Broker.
97

98      Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not
99      receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract up to the
100      earlier of:
101          (i.) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected to
102            waive the financing contingency of this Contract; or
103          (ii.) 7 days prior to Closing Date.

104      If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms of
105      this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under
106      this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8, then this financing
107      contingency shall be deemed waived by Buyer.

108      If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the
109      Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the
110      Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract); (3)
111      appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the
112      loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer,
113      thereby releasing Buyer and Seller from all further obligations under this Contract.

Buyer's Initials _____ Page 2 of 11 Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 084538-000142-0583835

formsimplicity

114* ☐ (c) Assumption of existing mortgage (see rider for terms).
115* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

116 **CLOSING COSTS, FEES AND CHARGES**

117 **9.   CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
118      **(a)  COSTS TO BE PAID BY SELLER:**
119      • Documentary stamp taxes and surtax on deed, if any          • HOA/Condominium Association estoppel fees
120      • Owner's Policy and Charges (if Paragraph 9(c) (i) is checked)  • Recording and other fees needed to cure title
121      • Title search charges (if Paragraph 9(c) (iii) is checked)    • Seller's attorneys' fees
122*     • Other:_____
123          If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a
124          sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If
125          actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual
126          costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
127      **(b)  COSTS TO BE PAID BY BUYER:**
128      • Taxes and recording fees on notes and mortgages              • Loan expenses
129      • Recording fees for deed and financing statements            • Appraisal fees
130      • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)  • Buyer's Inspections
131      • Survey (and elevation certification, if required)            • Buyer's attorneys' fees
132      • Lender's title policy and endorsements                       • All property related insurance
133      • HOA/Condominium Association application/transfer fees        • Owner's Policy Premium (if Paragraph
134                                                                          9 (c) (iii) is checked.)
135*     • Other:_____
136*     **(c)  TITLE EVIDENCE AND INSURANCE: At least _____ (if left blank, then 5) days prior to Closing Date, a title**
137          insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as
138          exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see
139          STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance
140          covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
141          The owner's title policy premium, title search, municipal lien search and closing services (collectively, "Owner's
142          Policy and Charges") shall be paid, as set forth below
143          **(CHECK ONE):**
144*         ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for
145              closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid
146              by Buyer to Closing Agent or such other provider(s) as Buyer may select); or
147*         ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
148              services related to Buyer's lender's policy, endorsements, and loan closing; or
149*         ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy of
150              title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which
151              is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien
152              search. Buyer shall obtain and pay for post-Closing continuation for Buyer's owner's policy, and if
153*             applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $ _____ (if left blank,
154              then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.
155      **(d)  SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and
156          certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall
157          be furnished to Buyer and Closing Agent within 5 days after Effective Date.
158*     **(e)  HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
159*          _____ at a cost not to exceed $_____. A home
160          warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
161          appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
162      **(f)  SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
163          ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
164          ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
165          improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed
166          on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in
167          installments **(CHECK ONE):**
168*         ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
169              Installments prepaid or due for the year of Closing shall be prorated.
170*         ☒ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
171          IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

172   This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD)
173   pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

174   **DISCLOSURES**

175   **10. DISCLOSURES:**

176   (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient
177   quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal
178   and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon
179   testing may be obtained from your county health department.

180   (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
181   does not know of any improvements made to the Property which were made without required permits or made
182   pursuant to permits which have not been properly closed.

183   (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
184   desires additional information regarding mold, Buyer should contact an appropriate professional.

185   (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone
186   the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving
187   the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal
188   Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service
189   under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and /or flood insurance
190   rating purposes is below minimum flood elevation or is ineligible for flood insurance through the National Flood
191*   Insurance Program, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left
192   blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and
193   Seller from all further obligations under this Contract, which Buyer accepts existing elevation of buildings and
194   flood zone designation of Property. The National Flood Insurance Reform Act of 2012 (referred to as Biggert-
195   Waters 2012) may phase in actuarial rating of pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures
196   (residential structures in which the insured or spouse does not reside for at least 80% of the year) and an elevation
197   certificate may be required for actuarial rating.

198   (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
199   required by Section 553.996, F.S.

200   (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
201   mandatory.

202   (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS
203   CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY
204   DISCLOSURE, IF APPLICABLE.**

205   (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
206   PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
207   PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
208   IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
209   PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY
210   PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

211   (i) **FIRPTA TAX WITHHOLDING:** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the
212   Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may
213   require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or
214   prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent
215   that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller
216   are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and
217   withholding requirements pursuant to FIRPTA.

218   (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not
219   readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence,
220   Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to
221   the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no
222   written or verbal notice from any governmental entity or agency as to a currently uncorrected building,
223   environmental or safety code violation.

224   **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

225   **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property,
226   including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS
227   Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

 (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __0__ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

 (b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

 (c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

 (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

**ESCROW AGENT AND BROKER**

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.**

FloridaRealtors/FloridaBar-ASIS-2 Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 084538-000142-0583835

formsimplicity

287 Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases
288 Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs
289 and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers,
290 directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by
291 Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii)
292 Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at
293 Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended,
294 including Broker's referral, recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv)
295 products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by
296 any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective
297 vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will
298 not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,
299 Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

300                                    **DEFAULT AND DISPUTE RESOLUTION**

301 **15. DEFAULT:**
302    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including
303        payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the
304        account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full
305        settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this
306        Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights
307        under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split
308        equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be
309        greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
310    (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable
311        diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to
312        receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach,
313        and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.
314    This Paragraph 15 shall survive Closing or termination of this Contract.
315 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller
316    arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as
317    follows:
318    (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
319        resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
320        16(b).
321    (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
322        Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The
323        mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought
324        without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be
325        resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall
326        survive Closing or termination of this Contract.
327 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by
328    this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
329    conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
330    from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation.
331    This Paragraph 17 shall survive Closing or termination of this Contract.

332                          **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

333 **18. STANDARDS:**
334    **A. TITLE:**
335    (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph
336        9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and
337        delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing
338        and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the
339        Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the
340        following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and
341        requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise
342        common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted
343        public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear
344        or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f)

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

345  assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none
346  prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b)
347  – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable
348  Title Standards adopted by authority of The Florida Bar and in accordance with law.
349  (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in
350  writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered
351  to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to
352  examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's
353  notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to
354  have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with
355  proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if
356  Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects
357  within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a)
358  extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use
359  reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with
360  existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days
361  after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and
362  receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If
363  after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this
364  Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all
365  further obligations under this Contract.
366  **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach
367  on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental
368  regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters,
369  together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer
370  timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title
371  defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's
372  request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the
373  extent the affirmations therein are true and correct.
374  **C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the
375  Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
376  **D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
377  tenant(s)/occupant(s) specifying tenure and duration of occupancy, rental rates, advanced rent and security deposits
378  paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same
379  information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may
380  thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any,
381  differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s)
382  fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such
383  information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit,
384  thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and
385  assign all leases to Buyer who shall assume Seller's obligations thereunder.
386  **E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement,
387  claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real
388  Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within
389  that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors,
390  subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general
391  contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs
392  which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.
393  **F.  TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.**
394  Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
395  specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a
396  Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is
397  located) of the next business day.
398  **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable
399  to each other for damages so long as performance or non-performance of the obligation is delayed, caused or
400  prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual
401  transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer
402  or Seller, and which, by: exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to
403  prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure
404  prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance

Buyer's Initials _____  **Page 7 of 11**                                   Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 048433-500141-0706075

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

405 under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering
406 written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
407 further obligations under this Contract.
408 **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal
409 representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in
410 STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute
411 bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.
412 **I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
413 (i)  **LOCATION:** Closing will take place in the county where the Real Property is located at the office of the attorney or
414 other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance, or, if no
415 title insurance, designated by Seller. Closing may be conducted by mail or electronic means.
416 (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale,
417 certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's
418 possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all
419 work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable the survey, flood
420 elevation certification, and documents required by Buyer's lender.
421 (iii)  **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
422 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
423 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all closing**
424 **funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
425 **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for
426 insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and
427 closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not
428 more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall,
429 within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such
430 notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer
431 shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment,
432 Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special
433 warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take
434 title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of
435 warranties contained in the deed or bill of sale.
436 **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the
437 day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including
438 special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other
439 expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event
440 premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be
441 made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow
442 deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax with due
443 allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs on a date when
444 current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such
445 assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior
446 year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which
447 improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's
448 millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to
449 the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration
450 based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This
451 STANDARD K shall survive Closing.
452 **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall,
453 upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-
454 through (or follow-up walk-through if necessary) prior to Closing.
455 **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
456 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
457 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant
458 to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to
459 complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration
460 exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any
461 unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price,
462 Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby
463 releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree
464 damage by casualty or other natural occurrence shall be cost of pruning or removal.

Buyer's Initials _____  _____     Page 8 of 11     Seller's Initials _____  _____
FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 048433-600141-0706075

formsimplicity

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

**T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purposes of this Contract .

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real property to withhold 10% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the complexity and potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding compliance, particularly if an "exemption" is claimed on the sale of residential property for $300,000 or less.

(i)   No withholding is required under Section 1445 if the Seller is not a "foreign person," provided Buyer accepts proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller, signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold 10% of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii)   If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum, if any required, and timely remit said funds to the IRS.

(iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold 10% of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

(iv)  In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for disbursement in accordance with the final determination of the IRS, as applicable.

Buyer's Initials _____ _____    Page 9 of 11    Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 048433-600141-0706075

formsimplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

525     (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms 8288
526     and 8288-A, as filed.
527     **W. RESERVED**
528     **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller and*
529     *against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
530     *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
531     *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
532     *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
533     *Closing.*
534                  **ADDENDA AND ADDITIONAL TERMS**

535     **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
536*    Contract (Check if applicable):

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ M. Defective Drywall | ☐ X. Kick-out Clause |
| ☐ B. Homeowners' Assn. | ☐ N. Coastal Construction Control Line | ☐ Y. Seller's Attorney Approval |
| ☐ C. Seller Financing | ☐ O. Insulation Disclosure | ☐ Z. Buyer's Attorney Approval |
| ☐ D. Mortgage Assumption | ☐ P. Lead Based Paint Disclosure | ☐ AA. Licensee-Personal Interest in |
| ☐ E. FHA/VA Financing |     (Pre-1978 Housing) |     Property |
| ☐ F. Appraisal Contingency | ☐ Q. Housing for Older Persons | ☐ BB. Binding Arbitration |
| ☒ G. Short Sale | ☐ R. Rezoning | ☐ Other_____ |
| ☐ H. Homeowners'/Flood Ins. | ☐ S. Lease Purchase/ Lease Option | _____ |
| ☐ I. RESERVED | ☐ T. Pre-Closing Occupancy by Buyer | _____ |
| ☐ J. Interest-Bearing Acct. | ☐ U. Post-Closing Occupancy by Seller | _____ |
| ☐ K. RESERVED | ☐ V. Sale of Buyer's Property | |
| ☐ L. RESERVED | ☐ W. Back-up Contract | |

537*    **20. ADDITIONAL TERMS:**
538     1. ALL CONTRACTS MUST BE APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN
539     DISTRICT OF FLORIDA.
540     1. ALL DISPUTES RELATING TO THIS CONTRACT OR SALE OF THE PROPERTY SHALL BE HEARD BY THE UNITED
541     STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA.
542     3. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE PROPERTY IS BEING SOLD ON "AS IS/WHERE
543     IS" BASIS WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND.
544     4. SELLER, IN IS SOLE DICREPTION, MAY DECIDE TO CURE OR NOT TO CURE TITLE DEFECTS, INCLUDING
545     DEFECTS THAT REQUIRE THE PAYMENT OF MONEY (BUYER CAN CANCEL, IF TITLE DEFECT CANNOTBE FIXED BY
546     TRUSTEE FIXING IT WIHT MONEY, IF THE TRUSTEE CHOOSES TO DO SO)
547     _____
548     _____
549     _____
550     _____
551     _____
552     _____
553     _____

554                  **COUNTER-OFFER/REJECTION**

555*    ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver
556     a copy of the acceptance to Seller).
557*    ☐ Seller rejects Buyer's offer.

558     **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE IS**
559     **AN ATTORNEY PRIOR TO SIGNING.**

560     **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

561     *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and*
562     *conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be*
563     *negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

564 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE
565 COMPLETED.
566
567
568* Buyer: _____    Date: _1/5/15_
569
570
571
572
573* Buyer: _Carmela Navarrete_____    Date: _1/15/15_
574
575
576
577
578* Seller: _____    Date: _1/7/15_
579
580
581
582
583* Seller: _____    Date: _____
584
585 Buyer's address for purposes of notice              Seller's address for purposes of notice
586* 1684 MW 96 AVENUE, PEMBROKE PINES, FL 33024        _____
587* _____          _____
588* _____          _____
589
590 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to
591 compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to
592 disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties
593 and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed
594 funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to
595 Cooperating Brokers.
596
597*          Elena Freire                                      Michael D Mehdipour
598 **Cooperating Sales Associate, if any**                **Listing Sales Associate**
599
600*          NEXXOS REALTY                              Illustrated Properties Corporate Office
601 **Cooperating Broker, if any**                         **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 058519-900142-0490994

formsimplicity

## Addendum to Contract for Residential Sale and Purchase


**FloridaRealtors**
*REAL ESTATE · MORTGAGE · TITLE*

1   If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase

2*  between    **TRUSTEE KENNETH A. WELT FOR THE STATE OF EFRAIN & CYNTHIA ROSARIO**   ("Seller")

3*  and    **ANDREW FREIRE & CARMELA NAVARRETE**   ("Buyer")

4*  concerning the Property described as  10248 SW 12TH ST , Pembroke Pines, FL 33025-4701

5*

6    **( ) ( ) - ( ) AA. Short Sale Approval:** This Contract is contingent upon **Seller** obtaining
7    "Short Sale Approval" from **Seller's** lender(s) and all other lien holders (collectively "Lender"). Short Sale Approval
8    means Lender (i) approves the terms of this Contract and the settlement statement; (ii) agrees to a reduced payoff
9    and to provide satisfaction(s) and/or releases of the mortgage(s) and any other lien(s) encumbering the
10   Property ("Mortgage(s)"); and (iii) agrees to release **Seller** from any claim(s) for a deficiency under the Mortgage(s)
11   and note(s) secured by the Mortgage(s). **Seller** must deliver a copy of the Short Sale Approval to **Buyer** within 7 days
12*  after receipt but no later than _____ days (45 days if left blank) after Effective Date ("Approval Deadline").

13   If Lender makes an offer to **Seller** that does not include items (i) through (iii) above or contains additional terms or
14   obligations affecting **Seller**, **Seller** may, but is not required to, accept the offer. If **Seller** accepts the offer, it will be
15   deemed Short Sale Approval, and **Seller** will deliver a copy to **Buyer** as provided above.

16*  **1.**  **(Check if applicable)** ☐ **Seller's** Lender has set the list price and approved this Property for short sale.

17   **2.**  **Short Sale Application; Buyer Cooperation: Seller** will make application for short sale with Lender within
18*       _____ days (10 days if left blank) after Effective Date (Short Sale Application Date), unless **Seller** has already
19       done so; and **Buyer** will cooperate with Lender in all reasonable respects to effectuate the short sale.

20   **3.**  **Time Periods:** All time periods set forth in this Contract will begin on the day after **Seller** delivers Short Sale
21       Approval to **Buyer**, except time periods for Approval Deadline, Short Sale Application Date, Contract
22*      Termination Date, and the following items, if checked, will begin as set forth in this Contract: ☐ Initial Deposit
23*      ☐ any inspection provided for in this Contract that **Buyer** deems necessary ☐ other (specify):

24*

25*

26   **4.**  **Offers; Back-up Contracts:** If required by Lender, **Seller** may receive additional offers and submit such offers
27*      to Lender, even if such offers are not accepted by **Seller**. **(Check one)** Seller☐may☐may not enter into back-
28       up contracts. (If neither box is checked, **Seller** may enter into back-up contracts.)

29*  **5.**  **Closing Date; Termination: Seller** and **Buyer** agree to extend the Closing Date in this Contract _____ days
30       (15 days if left blank) if Lender requires additional time to complete the short sale. If **Seller** does not deliver a
31       copy of the Short Sale Approval by Approval Deadline, either party may thereafter terminate this Contract by
32       delivering written notice to the other; and **Buyer's** deposit(s) will be refunded. If (i) **Seller** has not delivered a
33*      copy of the Short Sale Approval to **Buyer** within _____ days (90 days if left blank) after Effective Date
34       (Contract Termination Date); or (ii) Lender fails to complete the short sale; or (iii) the Property is sold at a
35       foreclosure sale before Closing, this Contract will terminate; and **Buyer's** deposit(s) will be refunded.

36   **6.**  **Buyer Acknowledgement: Buyer** acknowledges that (i) Lender is not a party to this Contract and is
37       not obligated to approve this Contract; (ii) **Buyer** is responsible for understanding Lender's policies and
38       procedures; (iii) Lender may impose restrictions on **Buyer's** ability to resell the Property; and (iv) **Seller** and
39       Broker are not liable for delays caused by Lender, failure of Lender to approve or complete the short sale, or any
40       costs (such as payments for loan applications, inspections, and appraisals) associated with this short sale.

41   **7.**  **Seller Acknowledgment: Seller** acknowledges that (i) a short sale may be a taxable event to **Seller**, and
42       **Seller's** credit may be negatively impacted; (ii) **Seller** has been advised to consult with appropriate legal and tax
43       professionals and to rely on such professionals and not Broker for legal and tax advice; and (iii) **Seller**
44       releases Broker and its associates from all liability regarding the consequences of a short sale.